```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

                              )
DAISUKE ENOMOTO,              )
                              )
      Plaintiff,              )
                              )
                              )
        v.                    )       1:08cv861 (JCC)
                              )
                              )
SPACE ADVENTURES, LTD.,       )
                              )
      Defendant.              )
                              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion to Dismiss the Amended Complaint.  For the following reasons, the Court will grant in part and deny in part the motion.

**I. Background**

The allegations in the Amended Complaint are as follows.  On November 3, 2004, Daisuke Enomoto ("Plaintiff" or "Enomoto") and Space Adventures, Ltd. ("Defendant" or "SA") entered into the Orbital Space Flight Purchase Agreement (the "Agreement"), a written contract under which Defendant promised to facilitate Plaintiff's participation in an orbital space flight with the Russian Federal Space Agency ("RFSA") and Plaintiff promised to pay $20,000,000 to Defendant.  Section 5.02 of the Agreement divided this amount into four "milestone" payments: a $2,000,000 non-refundable deposit (Deposit), payable

1

upon execution of the Agreement, and three additional payments of $6,000,000.  After the first $6,000,000 installment, to be paid "upon selection to a mission with the date range that includes the Planned Launch Date," all amounts become non-refundable and Plaintiff is obligated to pay the full amount.

In the Agreement, Defendant represented that it had already procured rights from the RFSA to sell four seats on future flights to the International Space Station (ISS) to space tourists.  In fact, Defendant had only begun negotiations with the RFSA; it did not enter into a contract with that entity until August 30, 2005, approximately 10 months after the parties executed the Agreement.

Plaintiff paid the deposit, but before making the second payment, he requested that Defendant provide a space walk - "extra-vehicular activity" (EVA) - during his space flight. Defendant agreed to facilitate EVA, but stated that the RFSA had complete discretion over such activities.  Plaintiff then represented that, without EVA, he might not proceed with the space flight at all.  Several weeks later, Defendant told Plaintiff that the RFSA had approved his EVA and Defendant would charge Plaintiff an additional $10,000,000 for the activity.  In fact, the RFSA never approved EVA for Plaintiff.  Defendant submitted several drafts of an EVA addendum to Plaintiff, but Plaintiff did not sign any of them because he was not satisfied

with the (lack of) details that Defendant provided about EVA.
Plaintiff did, however, begin to make payments toward the
additional $10,000,000 EVA cost after Defendant made an oral
request that he do so.

On May 17, 2006, Plaintiff informed Defendant that he
had decided not to participate in EVA.  He did so because
Defendant never provided details on EVA and refused to include a
"best efforts" clause in the EVA addendum.  A few months later,
Plaintiff learned that EVA would need to be approved by all 16
ISS partners, including NASA.  NASA publically stated that it had
not been informed of any intention to sell EVA.  Defendant
refused to refund any of the $7,000,000 Plaintiff had paid toward
EVA, unilaterally informing Plaintiff that his EVA payments were
non-refundable.  Defendant did not seek the final $3,000,000 EVA
payment from Plaintiff.

In 2004, Defendant publically identified Plaintiff as
an investor in its business.  It then privately pressured
Plaintiff to invest in it throughout the two years that the
Agreement was in effect.  Plaintiff repeatedly refused.
Defendant eventually obtained another investor, Anousheh Ansari
(Ansari).  Defendant then offered Ansari the position of
Plaintiff's alternate on his space flight.  She trained alongside
Plaintiff and eventually paid Defendant $8,000,000 to go to the
ISS in what was originally Plaintiff's seat.

Also in 2004, Plaintiff underwent a medical pre-screening examination with a NASA physician working under contract with Defendant.  The doctor observed a number of medical conditions that presented problems for space flight.  Plaintiff was prescribed and underwent a number of treatments for these conditions in 2004 and 2005.  The conditions improved but did not disappear completely.

On June 29, 2006, the Multilateral Space Medicine Board (MSMB) certified Plaintiff as medically fit for space flight. MSMB has final authority over the medical certification of every space flight participant bound for the ISS.  It bases its decisions on medical standards and evaluation requirements developed by the sixteen ISS partners.  MSMB considers waivers of these medical standards through formal requests.  Defendant submitted a waiver request for Plaintiff and Plaintiff was subsequently approved.

Between August 5 and August 8, 2006, the Russian Government Medical Commission (GMK) convened and cleared Plaintiff for space flight after a final medical evaluation.  On August 11, 2006, Plaintiff communicated to Defendant that he did not intend to make the final payment under the Agreement, but wanted the $7,000,000 that he had paid toward EVA credited to the space flight.  Defendant refused and continued to seek the final $6,000,000 payment from Plaintiff.  It also demanded that

Plaintiff pay certain expenses that were to be covered by Defendant under the Agreement.

Between August 18 and 21, 2006, the RFSA required Plaintiff to undergo additional physical examinations.  On August 22, 2006, Defendant informed Plaintiff that his space flight had been cancelled because of the results of these evaluations. Plaintiff was given a letter (Rejection Letter), allegedly written by the RFSA, stating that, "due to recent changes in the health condition of Mr. Enomoto Daisuke . . . and on the basis of the GMK decision dated August 21, 2006, Mr. Enomoto is disqualified to fly to space and temporarily disqualified to attend the special training."

Plaintiff's medical condition was no worse at disqualification that it had been two weeks prior, when he was medically cleared by GMK, or seven weeks prior, when he was medically cleared by MSMB.  Plaintiff has repeatedly requested medical records regarding his disqualification, but Defendant has not provided them.  Defendant has also declined to refund any of the $21,000,000 paid by Plaintiff or to train him for a different flight.

Plaintiff filed a complaint on August 20, 2008 (Complaint).  Defendant filed a Motion to Dismiss the Complaint on September 24, 2008.  The Court held a hearing on this motion on November 21, 2008 and took the matter under advisement.

Before the Court issued its decision, Plaintiff filed an amended complaint (Amended Complaint) on December 24, 2008.  Defendant filed a Motion to dismiss the Amended Complaint on January 12, 2009.  Plaintiff opposed the motion on January 26, 2009; Defendant replied on February 3, 2009.  Defendant's Motion to Dismiss the Amended Complaint is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

The Amended Complaint states eight causes of action: Breach of Contract (Count I), Breach of Implied Covenant of Good Faith and Fair Dealing (Count II), Fraud (Count III), Fraud in the Inducement (Count IV), violations of the Virginia Consumer Protection Act (Count V), Conversion (Count VI), Breach of Oral Contract (VII), and Unjust Enrichment (Count VIII).  The parties agree that this case is governed by Virginia law.  The Court will address each count in turn.

The parties chose to brief the merits only of Count IV in the Motion to Dismiss the Amended Complaint and Memorandum in Opposition.  They represented to the Court that any changes that the Amended Complaint makes to the factual and legal allegations in the Complaint do not alter the Court's analysis of Counts I-III or Counts V-VIII.  In ruling on the question of whether Count IV of the Amended Complaint states a claim for relief, the Court will rely on the papers submitted with and in response to the Motion to Dismiss the Amended Complaint.  In ruling on the question of whether the other seven counts of the Amended Complaint state a claim for relief, the Court will rely only on the papers and oral argument submitted in favor of and opposition to the Motion to Dismiss the Complaint.

A.   Breach of Contract (Count I)

The elements of a Virginia breach of contract claim

7

are: (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

Plaintiff submits that the parties entered into the Agreement, that he paid Defendant $21,000,000, complied with medical recommendations and training standards, and is ready and willing to take his space flight. He alleges that Defendant breached the Agreement first by not being in privity of contract with the RFSA when it entered the Agreement, and then by failing to provide Plaintiff with a space flight. Plaintiff's first allegation is discussed below in section III.C. The second allegation, breach by failure to provide a space flight, is attacked by Defendant in two ways. First, Defendant argues that Plaintiff bears the risk of non-performance due to medical disqualification under the express terms of the Agreement. Second, Defendant submits that Plaintiff anticipatorily breached the Agreement by refusing to make the final payment, Am. Compl. at ¶ 218, and thus cannot now sue to enforce the other terms of the Agreement.

1. *The Express Terms of the Agreement*

The Agreement contains six provisions governing the refundability of the total $20,000,000 cost of the space flight. Section 5.03 (Refundability) states that "[p]ayments toward the

Space Flight Experience Price listed above shall not be refundable to the Client, except as expressly provided in Article 7 of this Agreement."  Article 7 contains four provisions that address the effects of termination by either party for specific reasons.

The Court finds that Article 7 does not provide a basis on which to dismiss this claim at this stage.  Plaintiff's allegations, that he fully performed under the Agreement, Am. Compl. at ¶ 265, and that Defendant failed to provide a space flight, *id.* at ¶ 271, are sufficient to survive this motion.  The Court cannot say, at this time, that none of the four provisions in Article 7 apply here.

2.  *Anticipatory Breach*

A party that anticipatorily breaches is "not entitled to enforce the contract," *Countryside Orthopaedics, P.C. v. Petyon*, 541 S.E.2d 279, 285 (Va. 2001), and relieves the other party of its obligation to perform, *Board of Supervisors v. Ecology One, Inc.*, 245 S.E.2d 425, 427-28 (Va. 1978).  The other party can lose the defense of anticipatory breach, however, if it nevertheless continues to perform.  *Am. Chlorophyll v. Schertz*, 11 S.E.2d 625, 628 (Va. 1940) (quoting 3 Williston *Contracts* § 688 (rev. ed.) ("[W]herever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself

9

liable if he subsequently fails to perform.")).  The Amended
Complaint alleges that both parties continued to perform after
Plaintiff's refusal to pay, up to the point of his medical
disqualification.  Am. Compl. at ¶¶ 220, 226, 232.  Thus,
regardless of whether and when the parties first breached the
Agreement, Plaintiff's allegations are sufficient to allow Count
I to survive a motion to dismiss.

    B.   <u>Breach of Implied Covenant of Good Faith and Fair
       Dealing (Count II)</u>

      In Virginia, the elements of a claim for breach of an
implied covenant of good faith and fair dealing are (1) a
contractual relationship between the parties, and (2) a breach of
the implied covenant.  *Charles E. Brauer Co., Inc. v. NationsBank
of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996).

      Plaintiff submits that Defendant breached this covenant
when it (1) failed to provide a space flight, and (2) failed to
inform Plaintiff of the likelihood that he would be medically
disqualified, when Defendant knew or should have known of that
likelihood before Plaintiff made the second payment.

      Defendant submits that this claim should be dismissed
because there is no implied covenant of good faith when an
express contract exists.  Moreover, it argues that the Agreement
explicitly disavows the possibility that Defendant owed Plaintiff
any fiduciary or other special duties.  *See* Agm't at § 8.06.
Lastly, Defendant submits that, to the extent that this cause of

action relies on the parties' contractual obligations, it is
duplicative of Count I.

In Virginia, every contract contains an implied
covenant of good faith and fair dealing. *Va. Vermiculite, Ltd.
v. W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir. 1998); *Penn.
Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va.
1987). Defendant argues otherwise, but its assertion is based on
an erroneous interpretation of Virginia law. Defendant quotes
the Virginia Supreme Court's statement that "in Virginia, when
parties to a contract create valid and binding rights, an implied
covenant of good faith and fair dealing is inapplicable to those
rights." *Ward's Equip., Inc. v. New Holland N. Am.*, 493 S.E.2d
516, 520 (Va. 1997). *Ward's*, however, addressed only conduct
that Defendant was explicitly authorized to undertake by the
contract. *Id.* The same Virginia court also declined to allow a
claim for breach of the implied covenant because the plaintiff
complained only that the defendant's exercise of rights
specifically afforded to it under the contract was arbitrary, but
not dishonest. *Charles E. Brauer*, 466 S.E.2d at 386. As noted
by the Fourth Circuit, these rulings are not inconsistent with
the implied covenant: "in Virginia, as elsewhere, [] although the
duty of good faith does not prevent a party from exercising its
explicit contractual rights, a party may not exercise contractual
discretion in bad faith, even when such discretion is vested

11

solely in that party." *Va. Vermiculite*, 156 F.3d at 542 (citations omitted).

This claim is properly pled because Plaintiff does not seek redress through an implied covenant claim merely for Defendant's unfavorable exercise of its explicit contractual rights.  Plaintiff alleges that Defendant's actions were not merely unfavorable, but actually dishonest.  Am. Compl. at ¶¶ 6, 278.  He alleges that Defendant purposefully failed to provide him with a space flight and purposefully failed to inform him of the high likelihood of medical disqualification until after he had paid three or four payments that Defendant submits are non-refundable.  *Id.*  These are not merely claims for Defendant's unfavorable exercise of its contractual rights.  Plaintiff has alleged bad faith and unfair dealing in a contractual relationship.  Defendant's motion to dismiss Count II will be denied.

C.   <u>Actual Fraud (Count III)</u>

In Virginia, actual fraud requires "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (citations omitted).

Plaintiff alleges that, at the time of the contract, Defendant did not "ha[ve] reserved and own[] sole and exclusive rights to provide four Space Flight Experiences [] during the years 2005, 2006 and 2007, after having purchased such rights and seats directly from the [RFSA]," as it represented in Article 1, ¶ 4 of the Agreement.  Rather, Plaintiff alleges, Defendant had only begun negotiating with the RFSA when it entered the Agreement.

Plaintiff thus claims that Defendant committed fraud by inducing him to enter the Agreement with false representations about its authority to put Plaintiff on a space flight.  As noted in section III.A above, Plaintiff also claims that this false representation was a breach of § 8.01.01 of the Agreement: "Each signatory warrants that it has full capacity and authority to enter into this Agreement."

Defendant does not dispute that it was not in privity of contract with the RFSA at the time it entered the Agreement.  It argues, however, that both of Plaintiff's causes of action based on its representation to the contrary should be dismissed because Plaintiff does not allege that he was harmed by Defendant's lack of authority.  Defendant notes that the Amended Complaint specifically alleges that Defendant later entered into a contract with the RFSA and did send four clients to the ISS on Plaintiff's originally-scheduled space flight.

13

1.  *Breach of Contract Claim*

To rebut this argument, Plaintiff makes arguments that refer to a "breach of contractual warranty claim."  This claim, Plaintiff argues, should not be dismissed because damages are not a required element of a breach of warranty claim.  *See Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 625 (4th Cir. 1999) ("To recover for breach of warranty under Virginia law, Hitachi has the burden of showing (1) the existence of a warranty and (2) a breach.").  The Amended Complaint, however, alleges breach of contract (Count I) (and fraud (Count III)), not breach of warranty.  The Court will not imply this additional cause of action into an otherwise thorough 336-paragraph complaint.  Plaintiff does not argue that he has alleged any damages resulting from Defendant's false statement.  The Court will dismiss Count I to the extent that it is based on Defendant's alleged misrepresentation in Article 1, ¶ 4 of the Agreement.

2.  *Fraud Claim*

Regarding the fraud claim based on this same statement, Plaintiff argues that he has sufficiently pled damages based on a "single fraudulent scheme" theory.  This theory was applied to deny a motion to dismiss in *Cars Unlimited II, Inc. v. National Motor Co., Inc.*, 472 F. Supp. 2d 740, 747 (E.D. Va. 2007).  In his briefs, Plaintiff asserts that Defendant was involved in a single fraudulent scheme involving a number of misrepresentations

14

that ended with Plaintiff suffering the following damages: $21,000,000 in payments, extensive medical and personal preparations, and no space flight.

*Cars* is the sole case that Plaintiff cited to support the single fraudulent scheme theory.  In that case, Cars Unlimited misrepresented that the collateral that it pledged to National "[wa]s free of any prior liens, security interests, or other encumbrances." *Id.*  The collateral was actually encumbered, but that the statement successfully induced National to enter a security agreement with Cars Unlimited. *Id.*  The court found that Cars Unlimited's first misrepresentation, regarding the collateral, was directly linked to National's loss of that collateral, even though additional fraud was necessary (requiring National to claim the collateral) for National to be damaged. *Id.*  It concluded that National had properly alleged damages because Cars Unlimited's fraud was all part of a single scheme to defraud National. *Id.*

Here, Plaintiff alleges that Defendant fraudulently asserted that it had the authority to send four tourists into space with the RFSA and that Plaintiff did not receive his flight.  Defendant did, however, facilitate space flights for four other tourists who flew on the flight for which Plaintiff was scheduled.  The Court finds that, assuming the single fraudulent scheme theory is valid in Virginia, it does not apply

15

here because Plaintiff does not allege that Defendant's lack of authority or delay in obtaining authority to send clients to the ISS led, in any way, to Plaintiff's failure to fly.  In contrast to the facts in *Cars*, Defendant's misrepresentation in Article 1 ¶ 4 was irrelevant to Plaintiff's failure to fly.  The Court will dismiss Count III.

    D.   Fraud in the Inducement (Count IV)

    To state a cause of action for fraudulent inducement of contract under Virginia law, a plaintiff must allege that the defendant made "misrepresentations [that] were 'positive statements of fact, made for the purpose of procuring the contract; that they are untrue; that they are material; and that the party to whom they were made relied upon them, and was induced by them to enter into the contract.'"  *Lucas v. Thompson*, 61 Va. Cir. 44, 2003 WL 483831 (Va. Cir. Ct. 2003) (quoting *Brame v. Guarantee Fin. Co., Inc.*, 124 S.E. 477 (Va. 1924)).  This tort also applies to situations where a misrepresentation regarding, or the concealment of, a relevant fact induces performance of an executory contract.  *See Ware v. Scott*, 257 S.E.2d 855, 858 (Va. 1979).

    In Count IV of the Amended Complaint, Plaintiff claims two separate acts of fraudulent inducement occurred.  First, he alleges that Defendant "falsely and fraudulently . . . represent[ed] to Mr. Enomoto that it would be possible for [him]

16

to participate in EVA." Am. Compl at ¶ 291. Second, he alleges that Defendant "fraudulently misrepresent[ed] to Mr. Enomoto that, though he was technically disqualified [from space flight] for the presence of [sic] kidney stones, he would nonetheless be permitted to take the [s]pace [f]light." *Id.* at ¶ 300. These misrepresentations, Plaintiff submits, caused him to make $19,000,000 in further payments to Defendant that he would not have otherwise made.

      1.   *EVA*

Plaintiff alleges that Defendant, "with intent to defraud Mr. Enomoto[,] represent[ed] to Mr. Enomoto that it would be possible for [him] to participate in EVA." Am. Compl at ¶ 291. Plaintiff further alleges that Defendant's representations about the possibility that Plaintiff could engage in EVA were false and that Defendant knew they were false at the time it made them. *Id.* at ¶ 292. The Amended Complaint states that Defendant made these misrepresentations "to continue to receive multi- million dollar payments from [Plaintiff]," *id.*, after Plaintiff clearly informed Defendant that "he was considering not going to [s]pace if he could not participate in EVA," *id.* at ¶ 293.

Defendant submits that the Court should dismiss Plaintiff's fraudulent inducement claim as it relates to EVA because it never guaranteed EVA and repeatedly informed Plaintiff

that only the RFSA had the authority to provide him with EVA. Defendant also argues that Plaintiff was not damaged by Defendant's alleged misrepresentation: Plaintiff decided not to participate in EVA and informed Defendant of this decision on May 17, 2006, before Defendant's performance under the alleged EVA contract was due.  *Id.* at ¶ 151.

Plaintiff responds that he so informed Defendant only because he realized that Defendant, despite its representations to the contrary, could not deliver EVA.  Plaintiff asserts that, while the RFSA may or may not have approved Defendant's request that it provide EVA for Plaintiff, *see* Am. Compl. at ¶ 67, the RFSA never sought the (necessary) approval of the other fifteen ISS members, *id.* at ¶ 205.  According to Plaintiff, this failure made it impossible for him to participate in EVA on his scheduled space flight in September 2006.  *Id.* at ¶ 209.  After he realized that EVA was impossible, Plaintiff alleges, he withdrew from the EVA agreement, refused to make additional EVA payments, and sought to have his prior EVA payments credited toward the cost of the space flight itself.  Prior to this realization, however, Plaintiff claims that he was damaged in the amount of the $19,000,000 ($12,000,000 under the Agreement and $7,000,000 for EVA), *id.* at ¶¶ 301, 302, that he paid to Defendant because he would not have submitted any of these payments if Defendant had not misinformed him about the possibility of EVA, *id.* at ¶ 293.

In the Amended Complaint, Plaintiff has alleged that Defendant made misrepresentations to him to secure his performance of the executory contract.  He has also alleged that he relied on those representations in continuing to perform under the Agreement.  The Court finds that Plaintiff has adequately pled a claim for fraudulent inducement by means of Defendant's alleged misrepresentations about EVA.

### 2.  *Medical Disqualification*

As noted above, Count IV of the Amended Complaint states two bases for Plaintiff's fraudulent inducement claim. The second basis is that Defendant "knew as of December 2004," when Plaintiff had paid only the Deposit, "that Mr. Enomoto's medical conditions . . . would preclude or very likely preclude Mr. Enomoto from receiving certification for space flight under at least ISS medical standards."  Am. Compl. at ¶ 301.  Plaintiff further alleges that Defendant, "in bad faith, reassured Mr. Enomoto that he would be permitted to fly despite disqualification for the presence of kidney stones and used that reassurance to continue to collect $19,000,000" from Plaintiff before he was medically disqualified.  *Id.* at ¶ 301.  Finally, Plaintiff asserts that Defendant's misrepresentations reasonably "induced" his continued performance under the Agreement.  *Id.* at ¶¶ 302, 304.

In his opposition to Defendant's pending motion to dismiss, Plaintiff represents that ¶¶ 45 and 59 of the Amended Complaint provide the specific factual basis for the general allegations in ¶¶ 301-04. Pl.'s Mem. in Opp'n at 7. The Court will rely on this statement and evaluate the sufficiency of Count IV of the Amended Complaint using these allegations.

Paragraph 45 of the Amended Complaint states that in January 2005, Defendant informed Plaintiff that his kidney stones disqualified him from space flight under current medical standards. Am. Compl. ¶ 45. It also informed him that this was only a technical disqualification and that he would still be permitted to fly to the ISS. *Id.*

Defendant asserts that the Court should dismiss Count IV, to the extent that it is based on ¶ 45, because it (1) fails to satisfy Rule 9(b)'s pleading requirements, (2) mischaracterizes the content and context of relevant documents, (3) fails to allege any present statements of fact, and (4) fails to allege an agency or employment relationship between Defendant and the person who made the representations.

Paragraph 59 states that Plaintiff heard a rumor "that a NASA physician involved in the approval process for ISS tourists" was concerned about Plaintiff's kidney stones. Am. Compl. at ¶ 59. At some point, Plaintiff expressed concern to Defendant's Director of Programs, Ms. Akane McCarthy, about this

20

rumor.  *Id.*  On March 22, 2005, Ms. McCarthy responded by telling Plaintiff that "the Russian side" did not "seem to see [his kidney stones] as much of a problem."  *Id.*

Defendant asserts that the Court should dismiss Count IV, to the extent that it is based on ¶ 59, because (1) it does not allege a statement of present fact, (2) the purported statement is not alleged to be false, and (3) any reliance on the statement by Plaintiff was unreasonable.

Construing the Amended Complaint in Plaintiff's favor, *see Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), the Court finds that Plaintiff has alleged that Defendant made false statements for the purpose of inducing Plaintiff's continued performance under the Agreement, and that Plaintiff was so induced by them.  The questions for the Court, then, are whether these statements were representations of pre-existing facts and whether Plaintiff's allegations satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

i.   Statement of Present Fact

In Virginia, fraud claims "must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *McMillon v. Dryvit Sys., Inc.*, 552 S.E.2d 364, 368 (Va. 2001) (quoting *Patrick v. Summers*, 369 S.E.2d 162, 164 (Va. 1988)). "It is well settled that . . . the mere expression of an opinion,

however strong and positive the language may be," is not a statement of present fact. *Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 781 (Va. 1996) (citing *Saxby v. S. Land Co.*, 63 S.E. 423, 424 (Va. 1909)).   "Such statements are not fraudulent in law, because . . . they do not ordinarily deceive or mislead."  *Id.*  They "are merely loose, conjectural or exaggerated, [and] go for nothing, though they may not be true, for a man is not justified in placing reliance upon them."  *Id.* The reason for this rule is that "a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character."  *Patrick v. Summers*, 369 S.E.2d at 164 (quoting *Soble v. Herman*, 9 S.E.2d 459, 464 (Va. 1940)).   "Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud*."  Blair Const., Inc. v. Weatherford*, 485 S.E.2d 137, 139 (Va. 1997) (quoting *Lloyd v. Smith*, 142 S.E. 363, 365 (Va. 1928)).

In spite of this clear rule, Plaintiff argues that his allegations are an appropriate basis for a fraud claim, even though he has alleged only predictions, Pl.'s Mem. in Opp'n at 7, because predictions are sometimes actionable as present-existing facts for the purposes of a fraud claim.

The Virginia Supreme Court, however, has only acknowledged that possibility in the narrow context where a

promisor makes a promise with the present intention of never fulfilling it, and the plaintiff brings an claim for actual fraud.  *Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985); *see also Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988) (allowing claim for fraud in the inducement to proceed based on the *Colonial Ford* theory that a promisor's intention not to perform, held at the time he makes the promise, is a misrepresentation of present fact because false revenue reports provided circumstantial evidence Defendant's intent never to perform); *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 348 (Va. 1998) (dismissing Plaintiff's claims for constructive fraud and actual fraud because Defendant's alleged misrepresentations all related to his performance under the contract between the parties); *Blair Const.,* 485 S.E.2d at 139 (dismissing constructive fraud claim for failure to allege a statement of present fact because *Colonial Ford* applies only to allegations of actual fraud); *Filak v. George*, 2002 WL 31431890, at *9 (Va. Cir. Ct. May 24, 2002) (overruling Defendant's demurrer to allegation of actual fraud based on *Colonial Ford* because Plaintiff alleged that Defendant entered into the contract with an intention never to perform).

        None of the cases cited by Plaintiff contradict this clear Virginia law.  *See TC Tech Mgmt. Co., v. Geeks on Call Am., Inc.*, 2004 WL 5154906, at *4 (E.D. Va. Mar. 24, 2004) (internal

quotation and citation omitted); *Miller v. Premier Corp.*, 608 F.2d 973, 981 (4th Cir. 1979) (applying South Carolina law); *Boykin v. Hermitage Realty*, 360 S.E.2d 177 (Va. 1987); *Murphy v. McIntosh*, 99 S.E.2d 585 (Va. 1957); *Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207 (Va. 1956); *Miller v. Wash. Workplace, Inc.*, 298 F. Supp. 2d 364 (E.D. Va. 2004); *Armentrout v. French*, 258 S.E.2d 519 (Va. 1979).[1]

In fact, when the Virginia Supreme Court addressed a claim for fraudulent inducement of performance of an executory contract for the sale of real property, it held only that the defendant's failure to reveal post-contractual information that negated one of its pre-contractual representations could constitute fraudulent inducement. *Ware v. Scott*, 257 S.E.2d 855, 858 (Va. 1979). Plaintiff makes no allegation that Defendant made pre-contractual representations about Plaintiff's ability to be medically cleared for space flight. Thus, as neither ¶ 45 nor ¶ 59 includes an allegation that Defendant entered into the contract with the present intent not to perform, Virginia's narrow exception to its present-fact requirement for fraud allegations does not apply.

---

[1] Plaintiff also cites *Meres v. Accomac Banking Co.*, 168 S.E. 740, 744 (Va. 1933), for the proposition that "a promise [] is actionable as an act of fraud [if] it turned out to be untrue, causing damage to another who in good faith relied upon the representation." Pl.'s Mem. in Opp'n at 10 (quotation omitted). This case, over seventy-five years old, is not factually comparable, nor does it represent modern Virginia law.

Finally, in ¶ 45, Plaintiff's allegation that Defendant "assured him that he would be able and permitted to fly to the ISS, his technical [medical] disqualification notwithstanding," is merely a prediction regarding what another entity will or will not do.  In ¶ 59, Plaintiff alleges that Ms. McCarthy told him that the "Russian side in particular does not seem to see [the stone] as much of a problem" and that the "NASA medical specialist is an acquaintance of [a physician working for Space Adventures], so I think it will be OK."  This statement conveys Ms. McCarthy's opinion regarding the Russian's view of Plaintiff's kidney stones and a prediction regarding whether a certain NASA physician's view on his kidney stones will affect his space flight.  None of the alleged misrepresentations are present statements of fact and any reliance Plaintiff put on them was unreasonable under Virginia law.  This claim must fail under

ii.  Rule 9(b)

Given the clear result of the analysis above, the Court need not address whether the allegations in ¶¶ 45 and 59 of the Amended Complaint satisfy Rule 9(b)'s heightened pleading requirements for fraud.[2]  Count IV, to the extent that it is

---

[2] Plaintiff submitted several documents and a declaration to the Court with his opposition to the pending motion.  The declaration provides new and more specific allegations (including times, dates, and speakers) that may satisfy Rule 9's pleading requirements.  Defendant objects to these materials, arguing that they are improper responses to a Rule 12(b)(6) motion.  Pl.'s Reply at 7 (citing Fed. R. Civ. P. 12(d); *Farmer v. Employment Sec. Comm'n*, 4 F.3d 1274, 1278 n.8 (4th Cir. 1993); Charles Alan Wright & Arthur R. Miller, 5C Federal Practice & Procedure § 1366, at 180 (3d ed. 2004)).

premised on Defendant's statements regarding Plaintiff's ability to receive medical approval to take a space flight, will be dismissed.

     E.   <u>Virginia Consumer Protection Act (Count V)</u>

     The Virginia Consumer Protection Act of 1977 (VCPA), Va. Code Ann. § 59.1-196 *et seq.*, makes it unlawful for a supplier to misrepresent its "goods or services as those of another," *id.* at § 59.1-200(1), or to misrepresent "the affiliation, connection, or association" of itself or its goods or services, *id.* at § 59.1-200(3), or to use "any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," *id.* at § 59.1-200(14).  To state a cause of action under the VCPA, Plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction.  *Id.* at § 59.1-200(A) ("The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful . . . .").

     Plaintiff alleges that Defendant's fraudulent misrepresentations that it had the authority to provide a tourist space flight and EVA, and that Plaintiff would be permitted to fly to the ISS in spite of his medical conditions, are violations of the VCPA.  Plaintiff claims that Defendant is a "supplier" and the Agreement is a "consumer transaction" for "services to be

26

used primarily for personal, family or household purposes" under Va. Code Ann. § 59.1-198.  Am. Compl. at ¶¶ 311-12.  He also alleges that Defendant provides "services," in the form of tourist space flights, which are "work performed in the business or occupation of the supplier."  *Id.*; Va. Code Ann. § 59.1-198. Defendant does not dispute these allegations.

Defendant submits that this claim must be dismissed because it relies on legally insufficient fraud allegations.  As discussed above, Plaintiff's claim for actual fraud is insufficient as a matter of law; a portion of his fraudulent inducement claim is not.  Thus, with respect to only his allegation of fraudulent inducement regarding EVA, *see* section III.E.2 above, Plaintiff has pled (1) fraud through Defendant's misrepresentations regarding EVA (2) by a supplier, (3) in a consumer transaction.  For the reasons stated in section III.C, *supra*, the Court will dismiss Count V to the extent that it is based on Defendant's alleged misrepresentations that it had the authority to provide a tourist space flight and that Plaintiff would be permitted to fly in spite of his medical disqualification.

F.   Conversion (Count VI)

In Virginia, a conversion claim requires (1) ownership or right to possession of property at the time of the conversion, and (2) the defendant's wrongful exercise of dominion or control

27

over the plaintiff's property, depriving the plaintiff of possession.  *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)).

As an alternative to recovery for breach of contract, Plaintiff alleges that Defendant converted $19,000,000 of Plaintiff's property in a manner inconsistent with Plaintiff's rights to have that amount returned to him under § 7.03.02 of the Agreement.  Plaintiff also alleges that Defendant converted his personal valuables, which he gave to Defendant in late July 2006 for inclusion in the payload of his space flight.

Defendant argues that the conversion claim for the $19,000,000 should be dismissed as duplicative of Plaintiff's breach of contract claim.  Defendant submits that, while Virginia courts have not addressed this issue, other jurisdictions have held that "a conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006).

As acknowledged by Defendant, this limitation has not yet been imposed by Virginia courts.  "[W]hen a question of state law presents an issue of first impression, or if a possible interpretation might have the result of creating new law, a federal court must err on the side of restraint." *Devnew v.*

*Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671-72 (E.D. Va. 2005) (citing *Sellers v. Sch. Bd. of Manassas*, 960 F. Supp. 1006, 1012 (E.D. Va. 1997), *Gravins v. Int'l Playtex, Inc.*, 586 F. Supp. 251, 251 (E.D. Va. 1984) ("[T]here is no excuse for a court arrogating to itself the authority to move the law [of Virginia] along some purportedly wise or socially desirable path.")).  In addition, Virginia courts have repeatedly recognized the plaintiff's right to plead alternative causes of action that can survive a motion to dismiss.  *See, e.g., Hoar v. Great E. Resort Mgmt., Inc.*, 506 S.E.2d 777, 782 (Va. 1998) ("It is the rule in Virginia that a litigant may plead alternative facts and theories of recovery and state as many separate claims or defenses as he has regardless of consistency.").  The Court will not dismiss Plaintiff's properly pled alternative theory of recovery for the $19,000,000 that he paid to Defendant.

Defendant asserts that Plaintiff's claim for conversion of his personal valuables should be dismissed because it is waived by § 8.03 of the Agreement (Liability and Indemnification), which states that "SA shall not be liable for any claims, suits, or demands of whatever kind in connection with the loss or damage of any Client Equipment in the Course of the Space Flight Experience."

Client Equipment is defined in § 4.02.03 (Furnishing and Certification of Client Equipment) as "any special equipment,

29

including for experiments, photography, computers, and other
equipment and supplies that the Client wishes to take to the ISS
as part of the Client's allotted payload."  Section 3.03.02
(Space Flight Payload Specification) provides that "SA shall
enable the Client to carry up to five kg of SA-approved personal
effects (the "Client Personal Items") to the ISS."  The Amended
Complaint alleges that "[o]n or about May of 2006, Mr. Enomoto
brought to Moscow certain of his personal valuables with the
intention of including them as payload on his Space Flight (the
"Personal Valuables").  Am. Compl. at ¶ 160.  The parties agree
that some of the claimed items have been returned and that some
remain missing.  Def.'s Mem. in Supp. at 1 n.1; Pl.'s Mem. in
Opp'n at 17.  It is not clear from the allegations in the Amended
Complaint which of the two contract definitions applies to the
remaining claimed items, or whether the indemnification provision
applies to both.  Further, "the complaint is to be liberally
construed in favor of plaintiff." *Jenkins*, 395 U.S. at 421
(citations omitted).  For these reasons, the Court will deny
Defendant's Motion to Dismiss Count VI as to the personal
valuables.

     G.   Breach of Oral Contract (VII)

          Plaintiff alleges that, on May 17, 2005, the parties
entered into an oral agreement under which Defendant agreed to
provide Plaintiff with the opportunity for EVA during his space

flight and Plaintiff agreed to pay $10,000,000.  Am. Compl. at
¶ 329-30.  Plaintiff alleges that he has partially performed (by
paying $7,000,000) and is prepared to fully perform.  *Id.* at
¶ 331.  Plaintiff further alleges that Defendant breached the
contact by failing to facilitate his participation in EVA and
failing to actually provide EVA.  *Id.* at ¶ 332-33.

Defendant agrees that a meeting of the minds was
reached some time between March and October 2005 to pursue EVA.
The essential terms were a price of $10,000,000 and additional
study and training to be provided by the RFSA and facilitated by
Defendant.  Defendant agrees that Plaintiff has partly performed,
but argues that he anticipatorily breached the oral agreement,
relieving Defendant of further performance.  *See* Am. Compl. at
¶ 151 ("On May 17, 2006, a representative of Mr. Enomoto informed
Space Adventures that he had decided not to participate in the
EVA program.").

Plaintiff responds, somewhat confusingly, that
Defendant, as the party asserting that an oral contract has been
formed, bears the burden of showing an actual meeting of the
minds with respect to the material terms.  Pl.'s Mem. in Opp'n at
23 (citing *Avery v. City of Norfolk*, 61 Va. Cir. 453, 2003 WL
22382786, at *3 (Va. Cir. Ct. 2003)).  He asserts that no oral
contract could have been formed as a matter of law because no
meeting of the minds occurred on the material term of what the

EVA would include.  *Id.* (citing *Valjar, Inc. v. Mar. Terminals, Inc.*, 265 S.E.2d 734, 737 (Va. 1980).  Plaintiff also states that any contract fails for lack of consideration because Defendant did not have the authority to offer EVA.  Thus, Plaintiff did not commit an anticipatory breach, but simply realized that Defendant had no authority to deliver EVA and made no further payments toward it.

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint.  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  As Plaintiff clearly alleged in the Amended Complaint that an oral contract was formed, the Court will disregard Plaintiff's assertions to the contrary in his opposition brief for the purposes of this motion.  The Court also finds that the allegations in the Amended Complaint regarding Plaintiff's decision to discontinue his performance under the parties' oral contract, *see, e.g.,* Am. Compl. at ¶¶ 151, 332-33, do not provide a sufficient basis for the Court to find, at this time, that Plaintiff's actions constitute an effective anticipatory breach under the standards discussed in section III.A.  The Court will deny Defendant's Motion to Dismiss Count VII.

H.   Unjust Enrichment (Count VIII)

In his final claim, Plaintiff alleges that Defendant was unjustly enriched at Plaintiff's expense when it knowingly

accepted and retained EVA payments without providing EVA, transferring the money to the RFSA, or facilitating anything more than limited EVA training.  Plaintiff pleads this as an alternative to his cause of action for recovery of the EVA payments under an oral contract.

Defendant argues that the Court should dismiss this claim because the parties formed an express contract regarding EVA and unjust enrichment sounds in implied or quasi-contract, arising only "in the absence of an express, enforceable contract." *Urban Protective Svcs. v. Great Latin Rests, LLC*, 2007 Va. Cir. LEXIS 33, at *4 (Va. Cir. Ct. 2007).

As discussed in section III.F above, Virginia courts have repeatedly recognized a plaintiff's right to plead alternative theories of recovery. *Hoar v. Great E. Resort Mgmt., Inc.*, 506 S.E.2d 777, 782 (Va. 1998).  At least one Virginia Circuit Court has expressly applied this rule to breach of contract and quantum meruit claims. *Mar Tech Mechanical, Ltd. v. Chianelli Bldg. Corp.*, 54 Va. Cir. 569, 2001 WL 1262387, *5 (Va. Cir. Ct. 2001) ("[E]ven if it were not possible to actually recover under both at the same time . . . Plaintiff merely wishes to plead alternative theories of his case, which he is clearly entitled to do, and allow the finder of fact to determine whether the parties did or did not have a contract.")  The Court will deny Defendant's Motion to Dismiss Count VII.

**IV.   Conclusion**

For these reasons, the Court will grant Defendant's motion to dismiss the following counts: Count III, Count I only to the extent that it is based on Article 1, ¶ 4 of the Agreement, Count IV to the extent that it is based on Defendant's representations regarding Plaintiff's ability to participate in space flight despite his medical conditions, and Count V to the extent that it is based on Defendant's representations in Article 1, ¶ 4 of the Agreement and Plaintiff's ability to participate in space flight despite his medical conditions.  The Court will deny the remainder of the motion.

An appropriate Order will issue.

March 3, 2009                    _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE